United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 05-40846

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JED STEWART LINEBERRY,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Eastern District of Texas
(4:04-CR-25-ALL)**

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Primarily at issue is whether Jed Lineberry's indictment, charging him with laundering monetary instruments (money laundering), in violation of 18 U.S.C. § 1956(a)(1)(A)(i), was constructively amended. Also at issue are: the denials of his judgment-of-acquittal (JOA) and new-trial motions for money laundering; the JOA denial for his false-declaration count; the jury charge regarding money-laundering elements; and his criminal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

history being based upon judicial findings for prior convictions.

**AFFIRMED.**

I.

In February 2004, Lineberry was indicted on 19 money-laundering counts and one count of false declaration before a court. At his trial that October, the Government offered evidence that, beginning in mid-2001, Lineberry and his wife, Melissa Skeens, recruited, organized, promoted, and managed Worldwide Escorts, a prostitution organization operating out of Plano, Texas. Using an Internet website, they listed and advertised the prostitutes, including their physical attributes and sexual interests and inhibitions. Upon selecting a prostitute, the client would call the 1-800 telephone number listed on the website. Lineberry, Skeens, or a receptionist answered the calls and prepared a customer information sheet, including the fees and credit-card number for customers not paying cash, and made arrangements for the customer and prostitute to meet.

The organization was operated out of Lineberry and Skeens' residence, which Lineberry used to interview prostitutes and to take sexually explicit photographs of, and have sex with, them. The prostitutes sometimes had sex with their customers in the house while Lineberry was there.

As part of the Government's case, an undercover police officer with the Plano Police Department testified she went to Lineberry's

2

residence to interview for a position with Worldwide Escorts. She was given an employment application asking whether she had a problem being photographed nude and was willing, by having sex with the interviewer, to display the skills that would make her suitable for the job. The latter question was followed by a sentence stating that a negative reply meant she would not be hired.

Lineberry and Skeens orchestrated the prostitution and money-laundering activities of at least 40 prostitutes in multiple States; Lineberry was the operation's organizer and leader. By the fall of 2002, Lineberry and Skeens generated approximately $560,000 from their illegal activities. They transferred and distributed these proceeds via the United States banking system and various credit-card systems; portions were used to promote and carry on the organization's activities, such as recruiting, advertising, apartment rental, payroll expenses for prostitutes, and communications expenses.

The Government also offered evidence regarding Lineberry's false declaration before a court, presenting portions of a transcript from a sentencing hearing for Lineberry's earlier felon-in-possession-of-a-firearm trial. There, Lineberry testified he never received any money from his escort business. In response to the false-declaration charge, Lineberry offered supplemental testimony showing he later clarified that money was used to make house payments and pay bills.

3

Lineberry also presented evidence he was operating a legal escort service. He claimed he contacted the Texas Attorney General's office to ascertain how to operate within legal limits. Although many prostitutes testified that having sex with customers was an implied condition of employment, Lineberry pointed to their employment contract, which stated: "I agree that I will never have sex as part of a fee or for a fee".

At the close of the Government's evidence, Lineberry moved for JOA; it was denied. This motion was not renewed, however, at the close of all the evidence.

The jury found Lineberry guilty of 18 of the 19 money-laundering counts and the false-declaration count. Pursuant to a special verdict form, it also found: Lineberry was the organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; he laundered funds between $400,000 and $1 million; and his offense involved a commercial sex act through the use of physical force, fraud, or coercion.

Lineberry moved for a new trial claiming, *inter alia*, the Government offered insufficient evidence to support the verdict and the court erred in denying his motion to dismiss the indictment. That motion was denied in November 2004.

In May 2005, Lineberry was sentenced, *inter alia*, to 90 months for each money-laundering, and 60 months for his false-declaration,

4

conviction.  The sentences were to run concurrently upon completion of his earlier federal sentence.

## II.

Lineberry claims:  his indictment was constructively amended; his JOA and new-trial motions for money laundering were erroneously denied; his JOA motion was erroneously denied for his false-declaration conviction because the evidence was insufficient to prove various elements of the offense; the jury charge improperly stated the money-laundering elements; and his criminal history was based erroneously upon judicial findings of prior convictions.

## A.

Primarily at issue is whether Lineberry's indictment was constructively amended.  We review *de novo*.  ***United States v. Alhalabi***, 443 F.3d 605, 614 (7th Cir. 2006).

As discussed *infra*, to prove the money-laundering charges alleged in the indictment, the Government was required to prove, *inter alia*, that Lineberry knew the property involved in the financial transactions represented the proceeds of some form of a *felony*.  *See* 18 U.S.C. § 1956(a)(1)(A)(i) and (c)(1).  The indictment stated:

> [Lineberry,] with the intent to promote the carrying on of a specific unlawful activity as defined in Title 18, United States Code, Section 1956(c)(7), 1961(1) and 1952(b), namely, the use of an interstate facility to distribute the proceeds and *promote the unlawful activity of prostitution*, did knowingly and willfully conduct and cause to

5

be conducted financial transactions designed to promote the carrying on of said unlawful activity, to wit: ... financial transactions ... which occurred in interstate commerce, and while conducting said financial transactions, [*Lineberry*] *knew the property involved in the financial transactions represented the proceeds of some form of unlawful activity, namely, prostitution in violation of the laws of the State of Texas.*

(Emphasis added.)

The indictment did *not* identify the specific underlying felony offense that provided the unlawful proceeds. Accordingly, Lineberry claims it was constructively amended, in violation of his Fifth Amendment right to indictment by grand jury and his due process right to a fair trial, when the jury was instructed it must find "the financial transaction involved the proceeds of a specified unlawful activity, namely the use of an interstate facility to distribute the proceeds and promote the unlawful activity of *aggravated promotion of prostitution*", a felony offense. (Emphasis added.) Pursuant to Texas Penal Code Annotated § 43.04(a), aggravated promotion of prostitution occurs when a person "knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes".

Lineberry's challenge to the indictment was first raised only five days before trial, when he moved to dismiss it for failure to identify the specific felony offense he was alleged to have known generated the proceeds involved in the indictment's alleged money-

6

laundering transactions. After a telephonic hearing on 1 October 2004, the court orally denied the motion. Lineberry renewed his motion on the first day of trial, requesting the Government be required to choose under which felony offense it was prosecuting. The Government responded it intended to offer evidence that, with regard to the proceeds, Lineberry violated felony prostitution law of the State of Texas — the offense of aggravated promotion of prostitution, in violation of Texas Penal Code Annotated § 43.04. The motion was denied a second time; it was denied a third time prior to the jury's being charged.

After trial, the court, by written order on 18 October, explained the indictment sufficiently alleged all elements of 18 U.S.C. § 1956(a)(1)(A)(i): "While a better Indictment would have specifically cited Texas Penal Code Section 43.04, aggravated promotion of prostitution, the specific citation is not constitutionally required". ***United States v. Lineberry***, No. 4:04CR25, order at 3 (E.D. Tex. 18 Oct. 2004).

A constructive amendment "*occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modified an essential element of the offense charged*". ***United States v. Chambers***, 408 F.3d 237, 241 (5th Cir. 2005) (emphasis in original; internal citation omitted). Lineberry was charged with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), which states:

7

> Whoever, *knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity*, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... with the intent to promote the carrying on of specified unlawful activity ... shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i) (emphasis added). Section 1956(c)(1) defines "'knowing that the property involved in a financial transaction represents the proceeds of *some form of unlawful activity*'" as knowing "the property ... represented proceeds from some form, *though not necessarily which form*, of activity that constitutes a *felony* under State, Federal, or foreign law ...." *Id.* § 1956(c)(1) (emphasis added).

Lineberry's indictment identified "prostitution in violation of the laws of the State of Texas" as the activity through which he knew he received his proceeds for money laundering. Under Texas law, however, prostitution is a misdemeanor, not a felony, offense. TEX. PENAL CODE ANN. § 43.02. Therefore, at issue is whether his indictment sufficiently put him on notice both to prepare his defense and for double-jeopardy purposes. *See* **United States v. Webb**, 747 F.2d 278, 284 (5th Cir. 1984) ("To be sufficient, an indictment needs only to allege each essential element of the offense charged so as to enable the accused to prepare his defense

8

and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding."), *cert. denied*, 469 U.S. 1226 (1985).

In determining whether Lineberry's indictment was sufficient, we consider not "whether [it] could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards". *Id*. Furthermore, this inquiry is "governed by practical and not technical considerations". *Id*.

As a practical matter, Lineberry was sufficiently put on notice that the felony of aggravated promotion of prostitution was the underlying offense for his money-laundering charge. Pursuant to 18 U.S.C. § 1956(a)(1)(A)(i) and (c)(1)'s requirements, he knew a *felonious* unlawful activity had to be the basis of his unlawful money laundering proceeds. Although the indictment referenced prostitution in a generic fashion, Texas has only two types of felony prostitution: (1) aggravated promotion of prostitution; and (2) compelling prostitution. The latter occurs when a person "knowingly ... causes another by force, threat, or fraud to commit prostitution; or ... causes by any means a person younger than 17 years to commit prostitution". TEX. PENAL CODE ANN. § 43.05. Lineberry's indictment did *not* contain any allegations even remotely suggesting compelling prostitution by either of these means.

On the other hand, as stated above, aggravated promotion of prostitution occurs when a person "knowingly owns, *invests in*,

9

*finances*, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes". TEX. PENAL CODE ANN. § 43.04(a) (emphasis added). Although the indictment did not contain specific facts of the offense, its language and tenor, at the very least, indicated aggravated promotion serving as the underlying felony of which he had knowledge.

*United States v. Doucet*, 994 F.2d 169 (5th Cir. 1993), relied on by Lineberry to demonstrate that a change in the prosecution's theory is a constructive amendment of the indictment, is easily distinguishable. There, the Government changed its theory of the case between its opening statement and closing argument and, on the last day of trial, gave the court supplemental jury instructions reflecting this change. *Id*. at 171. Accordingly, this court held the indictment had been constructively amended because there was a blatant change from the original indictment that "seriously undercut the defense ... to the original terms of the prosecution". *Id*. at 173.

Here, there was no similar change during trial in the Government's case. It stated from the first day of trial that it was prosecuting the money-laundering charges using aggravated promotion of prostitution as the underlying felony. Furthermore, Federal Rule of Criminal Procedure 7(c)(3) provides: "Unless the defendant was misled and thereby prejudiced ... a [specific statutory] citation's omission is [not] a ground to dismiss the

10

indictment or information or to reverse a conviction". FED. R. CRIM. P. 7(c)(3); *see United States v. Threadgill*, 172 F.3d 357, 373 (5th Cir.), *cert. denied*, 528 U.S. 871 (1999). Accordingly, Lineberry's indictment was sufficient to put him on notice of the charges against him and was "sufficiently specific for double jeopardy purposes". *Webb*, 747 F.2d at 284.

B.

Maintaining the evidence was insufficient to prove he promoted aggravated prostitution, Lineberry claims his JOA and new-trial motions should have been granted for his money-laundering convictions. Similarly, for the former, he claims the evidence was insufficient to prove the underlying statement for his false-declaration conviction was material or made knowingly.

As noted, Lineberry moved for JOA at the close of the Government's evidence but failed to do so at the close of all the evidence. Accordingly, concerning whether JOA should have been granted, we review only to determine whether affirming his conviction would result in a manifest miscarriage of justice. *United States v. McIntosh*, 280 F.3d 479, 483 (5th Cir. 2002) ("[A manifest miscarriage of justice occurs] only where the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense [that is] so tenuous that a conviction would be shocking".) (second alteration in original; internal quotation omitted). We view the evidence in the light most favorable to the

11

Government, deferring to the jury's credibility determinations. *See* **id.**

We review for abuse of discretion the denial of a new-trial motion based on insufficiency of the evidence. ***Burton v. United States***, 237 F.3d 490, 496-97 (5th Cir. 2000).

1.

At trial, Lineberry insisted his business was a legal escort service. On appeal, he claims the evidence was insufficient to prove he committed promotion of aggravated prostitution, which, as explained *supra*, was the underlying offense for his money-laundering convictions.

The Government was *not* required to prove a violation of the underlying state-felony statute beyond a reasonable doubt; rather, it needed only offer proof of its existence. *See* ***United States v. Conway***, 507 F.2d 1047, 1051 (5th Cir. 1975). Lineberry conceded at least twice at trial that the Government did not have to prove the actual act of prostitution took place, but rather that the proceeds at issue were from an unlawful activity.

a.

The evidence, viewed in the light most favorable to the Government, was that Lineberry used credit-card systems to collect prostitution fees and used financial institutions to distribute those proceeds. Accordingly, Lineberry has *not* shown a manifest

miscarriage of justice. *See **United States v. Green***, 293 F.3d 886, 895 (5th Cir.), *cert. denied*, 537 U.S. 965 (2002).

b.

In considering whether the court abused its discretion by denying Lineberry's new-trial motion, we are mindful that "[s]uch motions are not favored and are viewed with great caution". ***United States v. Blackthorne***, 378 F.3d 449, 452 (5th Cir. 2004). Because there was evidence to support the jury's verdict, and because the Government was not required to prove aggravated promotion of prostitution beyond a reasonable doubt, the district court did not abuse its discretion in denying a new trial.

2.

Regarding his insufficiency-of-the-evidence claim for his false-declaration conviction, Lineberry was convicted under 18 U.S.C. § 1623(a). It provides: "Whoever under oath [before a court] ... *knowingly* makes any false *material* declaration ... shall be fined under this title or imprisoned ...." 18 U.S.C. § 1623(a) (emphasis added). As noted, he claims the evidence fails for both the knowingly and materiality elements.

a.

A statement is material when it "has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it [is] addressed". ***Kungys v. United States***, 485 U.S. 759, 770 (1988) (internal quotation omitted).

13

Materiality is a question of law "to be decided by the court", not the jury. *See, e.g.*, **United States v. Damato**, 554 F.2d 1371, 1373 (5th Cir. 1977) ("The trial court should embody its finding on materiality in an instruction to the jury.").

The court did not instruct the jury that, as a matter of law, Lineberry's statement was material; instead, it defined "material" and explained it was an essential element for a false-declaration conviction. *See* **Barnes v. United States**, 378 F.2d 646, 650-51 (5th Cir. 1967) (holding defendant was not prejudiced where jury was not instructed testimony was material as a matter of law, but was instead instructed it must find the testimony material to sustain a conviction), *cert. denied*, 390 U.S. 972 (1968); **Blackmon v. United States**, 108 F.2d 572, 574 (5th Cir. 1940) (holding, although jury should have been directly charged that testimony was material, the evidence amply supported the jury's verdict and there was "[n]o error affecting [appellant's] substantial rights"). In any event, there was evidence of materiality.

b.

To convict under 18 U.S.C. § 1623, the Government had to prove, *inter alia*, that Lineberry knew the statement was false when he made it. There was evidence the statement was made knowing it was false.

In sum, Lineberry has failed to demonstrate the requisite manifest miscarriage of justice. His sufficiency-of-the-evidence challenge to his false-declaration conviction fails.

C.

Lineberry contends the district court improperly charged the jury on the elements of money laundering specifically related to his *intent* to promote the carrying on of the specified unlawful activity. It instructed the jury must find Lineberry "intended to promote the carrying on of the specified unlawful activity", but, despite Lineberry's request, did not define "intended" or "intentionally".

Review is for abuse of discretion. *United States v. Garcia-Lopez*, 234 F.3d 217, 219 (5th Cir. 2000), *cert. denied*, 532 U.S. 935 (2001). Lineberry must show his request: "(1) was a correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired [his] ability to present a given defense". *United States v. Smithson*, 49 F.3d 138, 142 (5th Cir. 1995).

The court did not define "intentionally", but, at the Government's request, it defined "intended to promote" to include reinvesting proceeds in the illegal enterprise and paying salaries and expenses. Furthermore, the instructions conformed with the Fifth Circuit Pattern Jury Instructions regarding § 1956, which do

15

not require a definition of "intentionally" as it relates to proof that Lineberry intended to promote the carrying on of a specified unlawful activity. *See* Fifth Circuit Pattern Jury Instructions: Criminal § 2.76.

Lineberry has *not* shown the instructions as a whole failed to correctly reflect the law or that the failure to define "intentionally" impaired his defense. Rather, the jury's finding he "intended to promote" the specified unlawful activity was consistent with evidence that he used credit cards to collect the proceeds of prostitution and pay overhead expenses of the business, and that he made or caused another to make bank wires or write personal checks to pay salaries to prostitutes.

D.

Finally, Lineberry maintains the district court improperly used a number of criminal history points based on prior convictions in calculating his guideline sentencing range. The points were imposed for three offenses for which the presentence investigation report stated the details were unavailable.

1.

*Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998), forecloses Lineberry's claim that the court erred when increasing his sentence based upon the facts of prior convictions neither charged and proven beyond a reasonable doubt nor admitted by him. Lineberry contends that case has been abrogated and that a majority

16

of the Supreme Court would overrule it in the light of **Apprendi v. New Jersey**, 530 U.S. 466 (2000), as recognized in **Shepard v. United States**, 125 S. Ct. 1254, 1263-64 (2005) (Thomas, J., concurring in part and concurring in the judgment). Our court has repeatedly rejected such contentions on the basis that **Almendarez-Torres** remains binding. *See, e.g.*, **United States v. Garza-Lopez**, 410 F.3d 268, 276 (5th Cir.), *cert. denied*, 126 S. Ct. 298 (2005).

2.

Lineberry next contends the district court relied on hearsay and other information outside of the category of permissible proof in finding the fact of his prior convictions. *See* **Shepard**, 125 S. Ct. at 1263 (limiting inquiry of whether a guilty plea to a crime, defined by a nongeneric statute, equates admission of the generic offense elements "to the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant"); **United States v. Gutierrez-Ramirez**, 405 F.3d 352, 359 (5th Cir.) (limiting determination of whether convicted offense was a "drug trafficking offense" under Sentencing Guidelines to same documents) (internal quotation omitted), *cert. denied*, 126 S. Ct. 217 (2005). As the Government correctly notes, those cases are distinguishable from this one, in which the district court was *not* required to make any comparable factual determinations concerning Lineberry's prior convictions. Instead, the only factual

17

determination required was that the convictions took place and that Lineberry received the required sentences.

III.

For the foregoing reasons, Lineberry's conviction and sentence are

***AFFIRMED.***