**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2012

No. 11-40390

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JED STEWART LINEBERRY,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, KING, and OWEN, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Jed Stewart Lineberry appeals the district court's dismissal of his motion pursuant to 28 U.S.C. § 2255, collaterally attacking his convictions and sentences for money-laundering. On March 2, 2012, we granted a certificate of appealability ("COA") under 28 U.S.C. § 2253(c)(2) on the issue of whether the district court erred in denying Lineberry's claim that his money-laundering convictions should be vacated in light of *United States v. Santos*, 553 U.S. 507 (2008). We now AFFIRM.

**I.**

In February 2004, Lineberry was indicted on 19 counts of money-laundering under 18 U.S.C. § 1956(a)(1)(A)(i), and one count of false declaration

No. 11-40390

before a court pursuant to 18 U.S.C. § 1623. On October 13, 2004, following a jury trial, Lineberry was convicted of 18 counts of money-laundering and one count of making a false declaration. The aggravated promotion of prostitution pursuant to Texas Penal Code § 43.04(a) was the unlawful activity underlying the money-laundering convictions.

In May 2005, Lineberry was sentenced to 90 months on each of the money-laundering counts, and 60 months for the false declaration conviction, all terms to run concurrently. We affirmed Lineberry's convictions and sentence on direct appeal. *See United States v. Lineberry*, 185 F. App'x 366 (5th Cir. 2006). Lineberry subsequently filed a petition for a writ of certiorari, which the Supreme Court denied on October 30, 2006.

Lineberry timely filed a 28 U.S.C. § 2255 motion. In his § 2255 motion, Lineberry primarily argued that his money-laundering convictions should be vacated because they were non-existing offenses based on the definition of "proceeds" under the Seventh Circuit's decision in *Santos v. United States,* 461 F.3d 886 (7th Cir. 2006). Lineberry subsequently filed a supplemental petition regarding his § 2255 motion, alleging that the definition of "proceeds" was wrongfully applied in his case based on the Supreme Court's intervening decision in *United States v. Santos*, 553 U.S. 507 (2008). Lineberry further contended that, because the money-laundering convictions were non-existent offenses under *Santos*, the false declaration conviction must be vacated because there was no nexus between his false declaration conviction and the money-laundering convictions in light of *Santos*.[1]

---

[1] Lineberry was convicted of making a false declaration to the court during his sentencing in which he was charged with being a felon in possession of a firearm. Lineberry represented he had not received any money from his escort business. At sentencing, this issue was material to whether or not Lineberry possessed any firearms in connection with another felony offense.

No. 11-40390

In assessing Lineberry's claims made in his § 2255 motion and on appeal, it is necessary to provide context by first discussing the Supreme Court's *Santos* decision, and our court's application of *Santos* in *Garland v. Roy*, 615 F.3d 391, 396-404 (5th Cir. 2010).

## II.

## A.

In *Santos*, the Supreme Court interpreted the meaning of "proceeds" under the money-laundering statute in effect at the time, 18 U.S.C. § 1956(a)(1).[2] *Santos*, 553 U.S. at 511. The statute provided that:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–(A)(i) with the intent to promote the carrying on of specified unlawful activity; . . .

will be [penalized]. 18 U.S.C. § 1956(a)(1). The question before the Court was whether the term "proceeds" in the statute meant the "profits" of the specified unlawful activity, or the "receipts" of such activity. *Santos*, 553 U.S. at 509.

Santos operated an illegal lottery, for which he employed a number of helpers. *Id.* at 509. Santos's operation included: runners, who gathered the bets

---

[2] In response to the *Santos* decision, Congress amended 18 U.S.C. § 1956 in May 2009 to provide a definition for "proceeds." *See* Fraud Enforcement and Regulatory Act of 2009, Pub. L. No. 111–21, § 2(f)(1), 123 Stat. 1617, 1618 (2009), codified at 18 U.S.C. §1956(c)(9). As amended, the statute defines "proceeds" broadly as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, *including the gross receipts of such activity*." 18 U.S.C. § 1956(c)(9) (emphasis added). This amendment effectively overruled *Santos* and applies prospectively. *See, e.g.*, *United States v. Walker*, 392 F. App'x 919, 928 n.11 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 542 (2010) ("In 2009, Congress legislatively overruled *Santos* by amending § 1956 . . . ."); *United States v. French*, No. 11-10294, 2012 WL 4845561, at *2 n.3 (9th Cir. Oct. 12, 2012) (citing *Walker,* 392 F. App'x at 928 n.11) (same).

and retained a percentage of the bets as commissions; and collectors, who delivered the money to Santos. *Id.* Santos then used the money to pay the collectors' salaries, and to pay the winners. *Id.* The "payments to runners, collectors, and winners formed the basis of the 10-count indictment" against Santos. *Id.* at 509. A jury found Santos guilty of one count of conspiracy to run an illegal gambling business, one count of running an illegal gambling business, one count of conspiracy to launder money, and two counts of money-laundering. *Id.* at 509-10. Santos's co-defendant, Diaz, pleaded guilty to conspiracy to launder money based on his receipt of a salary as a collector. *Id.* at 509.

After the Seventh Circuit affirmed his convictions and sentences and the Supreme Court denied a writ of certiorari, Santos filed a writ of habeas corpus under 28 U.S.C. § 2255, challenging his convictions and sentences. *Id.* at 510. The district court dismissed all of Santos's claims, except his challenge to his money-laundering convictions. *Id.* The district court relied on Seventh Circuit precedent holding that the federal money-laundering statute's prohibition of transactions involving criminal "proceeds" applied only to transactions involving criminal profits, not criminal receipts. *Id.* (citations omitted). Applying that holding to Santos's case, "the District Court found no evidence that the transactions on which the money-laundering convictions were based (Santos's payments to runners, winners, and collectors and Diaz's receipt of payment for his collection services) involved profits, as opposed to receipts, of the illegal lottery. . . ." *Id.* Accordingly, the district court vacated the money-laundering convictions, and the Seventh Circuit affirmed. *Id.* The Government appealed to the Supreme Court.

Writing for the plurality in a fractured 4-1-4 decision, Justice Scalia held that "proceeds" meant "profits," and not "receipts" under the money-laundering statute. *Id.* at 514. Justice Scalia first noted that the term "proceeds" in the statute was undefined. *Id.* at 511. He further noted that the ordinary meaning

of "proceeds" "can mean either 'profits' or 'receipts.'"  *Id*.  Justice Scalia thus applied the rule of lenity to conclude that "proceeds" meant "profits," and not "receipts." *Id*. at 514.  He reasoned, "Because the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted." *Id.*

Importantly, Justice Scalia also found the argument persuasive that interpreting "proceeds" as "receipts" in the instant case would create the "perverse result" of the "merger problem." *Id*. at 515.  He described the merger problem as follows:

> If "proceeds" meant "receipts," nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery.  Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money-laundering statute.  Congress evidently decided that lottery operators ordinarily deserve up to 5 years of imprisonment, § 1955(a), but as a result of merger they would face an additional 20 years, § 1956(a)(1).  Prosecutors, of course, would acquire the discretion to charge the lesser lottery offense, the greater money-laundering offense, or both—which would predictably be used to induce a plea bargain to the lesser charge.

*Santos*, 553 U.S. at 515-16; *see also Black's Law Dictionary* 1078 (9th ed. 2009) (defining merger in the criminal law context as "[t]he absorption of a lesser included offense into a more serious offense when a person is *charged with both crimes*, so that the person is not subject to double jeopardy" (emphasis added)).

Justice Scalia thus reasoned why interpreting "proceeds" to mean "profits" under the money-laundering statute avoided this merger problem:

No. 11-40390

> The Government suggests no explanation for why
> Congress would have wanted a transaction that is a
> normal part of a crime it had duly considered and
> appropriately punished elsewhere in the Criminal Code
> to radically increase the sentence for that crime.
> Interpreting "proceeds" to mean "profits" eliminates the
> merger problem. Transactions that normally occur
> during the course of running a lottery are not
> identifiable uses of profits and thus do not violate the
> money-laundering statute. More generally, a criminal
> who enters into a transaction paying the expenses of his
> illegal activity cannot possibly violate the
> money-laundering statute, because by definition profits
> consist of what remains after expenses are paid.
> Defraying an activity's costs with its receipts simply
> will not be covered.

*Id.* at 517. Justice Scalia reasoned that neither type of transaction underlying the money-laundering charges in *Santos* could be characterized as the lottery's profits: Santos's money-laundering charges were based on his payments to the lottery winners and his employees; Diaz's money-laundering charge was based on his receipts of payments as an employee. *Id*. at 524. Accordingly, Justice Scalia's plurality opinion affirmed the Seventh Circuit's vacatur of Santos's and Diaz's money-laundering convictions. *Id.*

Justice Stevens concurred in the judgment, providing the fifth vote to vacate the money-laundering convictions. *Id.* at 524-29 (Stevens, J., concurring). Justice Stevens agreed that the rule of lenity dictated that "proceeds" means "profits," and not "receipts," where the specified unlawful activity of illegal gambling creates the "perverse result" of the merger problem under the money-laundering statute. *Id*. at 528. In discussing the merger problem, Justice Stevens noted:

> Allowing the Government to treat the mere payment of
> the expense of operating an illegal gambling business
> as a separate offense is in practical effect tantamount

6

> to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.

*Id.* at 527. Justice Stevens also considered that the Guidelines provide for different ranges of punishment if the defendant is found guilty of two crimes. *Id.* at 527 n.6

Justice Stevens, however, clearly espoused that the definition of "proceeds" could vary depending on the specified unlawful activity forming the predicate for the money-laundering charges. *Id.* at 526. Thus, according to Justice Stevens, "proceeds" does not absolutely connote a meaning of "profits" under the statute. *Id.* Specifically, Justice Stevens agreed with Justice Alito's dissent that the legislative history indicates that "proceeds" means gross receipts "from the sale of contraband and the operation of organized crime syndicates involving such sales." *Id.* at 525-26. Thus, Justice Stevens could not agree with the plurality that the Court should apply the rule of lenity to these types of unlawful activities. *Id.* at 525-26 & n.3. However, Justice Stevens reasoned that this legislative history was not instructive in determining the meaning of "proceeds" for other specified unlawful activities under the statute. *Id.* at 525-26. Accordingly, Justice Stevens advocated a case-by-case approach for ascertaining whether a specified unlawful activity warrants the "profits" or the "receipts" definition of "proceeds," stating, "this Court need not pick a single definition of 'proceeds' applicable to every unlawful activity, no matter how incongruous some applications may be." *Id.* at 525. Justice Stevens thus summarized his opinion as follows:

> [M]y conclusion rests on my conviction that Congress could not have intended the perverse result that the dissent's rule [always defining proceeds as "gross receipts"] would produce if its definition of "proceeds" were applied to the operation of an unlicensed gambling

> business.    In other applications of the statute not involving such a perverse result, I would presume that the legislative history summarized by Justice ALITO reflects the intent of the enacting Congress. . . . Its decision to leave the term undefined is consistent with my view that "proceeds" need not be given the same definition when applied to each of the numerous specified unlawful activities that produce unclean money.

*Id.* at 528 n.7 (citations omitted).

Justice Scalia's plurality opinion acknowledged that Justice Stevens' concurrence on the narrowest ground limits the Court's holding accordingly. *Id.* at 523.

## B.

In *Garland*, we interpreted *Santos* in the context of a 28 U.S.C. § 2241 "savings clause" claim and expressly held that the *Santos* decision applies retroactively.    615 F.3d at 396-99.    After recognizing Justice Stevens' concurrence as controlling, we then interpreted his concurrence as a "two-part" holding. *Id.* at 399, 402-03 (citations omitted).

The first part of Justice Stevens' concurrence held that the rule of lenity requires a finding that "proceeds" means "profits" in cases where defining proceeds as "gross receipts" would result in a "merger problem." *Id.* at 402. We noted in *Garland* that a merger occurs "when a defendant could be punished for the same 'transaction' under the money-laundering statute as well as under another statute, namely the statute criminalizing the 'specified unlawful activity' underlying the money-laundering charge." *Id.* Thus, a "merger problem" would exist "if 'proceeds' were to be defined as 'receipts' rather than 'profits,'" and the money-laundering charge could be based on the same "transaction" as the "predicate crime." *Id.* at 400. The second part of Justice Stevens' concurrence held that, in cases where there is no "merger problem,"

No. 11-40390

there should be a presumption that "proceeds" should be defined as "gross receipts," but that this presumption could be rebutted by the legislative history of the money-laundering statute. *Id.* at 402.

In *Garland*, the defendant was convicted of 52 counts of money-laundering which were predicated upon 62 counts of mail fraud and one count of securities fraud. *Id.* at 394. In applying *Santos*, we reasoned that:

> in light of the statute, indictment, and jury instructions of this case, it appears that (1) the Government did not prove or attempt to show that Garland engaged in money laundering with "proceeds," narrowly defined as "profits" rather than as "gross receipts"; (2) the same "transaction" may have been used to prove both the underlying unlawful activity and the money-laundering charges; and therefore (3) Garland's convictions for mail and securities fraud potentially "merged," with his money-laundering conviction.

*Id.* at 404. We thus concluded that Garland may have been convicted of a "non-existent offense."[3] *Id.* Accordingly, we reversed the district court's dismissal of Garland's § 2241 petition and remanded for further proceedings. *Id.*

### III.

In the instant case, Lineberry relied on *Santos* to claim that the term "proceeds" in his case was wrongfully applied because the trial evidence showed

---

[3] Garland thereby satisfied the third prong of our three-factor test for assessing whether a petitioner may bring a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in connection with 28 U.S.C. § 2255's savings clause. *Garland*, 615 F.3d at 404. These three factors are:

> (1) the petition raises a claim "that is based on a retroactively applicable Supreme Court decision"; (2) the claim was previously "foreclosed by circuit law at the time when [it] should have been raised in petitioner's trial, appeal or first § 2255 motion"; and (3) that retroactively applicable decision establishes that "the petitioner may have been convicted of a nonexistent offense."

*Id.* at 394 (quoting *Reyes–Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001)).

that his payments were "gross receipts," not "profits." Specifically, Lineberry argued that the trial evidence showed that the payment of payroll, utilities, transportation, photos, training, advertisements, and rent for his escort agency, Worldwide Escorts, constituted "gross receipts" because these items were business expenses. Lineberry also argued that the district court erroneously instructed the jury that proceeds included any property acquired as a result of the unlawful activity. Lineberry further argued that the jury could have found him guilty of receiving "profits" of only $16,000.

The magistrate judge issued a report and recommendation dismissing Lineberry's claim. With respect to Lineberry's claim that his money-laundering convictions were based on the wrong definition of "proceeds," the magistrate judge determined that this claim was procedurally barred and could have been raised on direct appeal. Therefore, the magistrate judge did not address Lineberry's *Santos* claim and recommended that both Lineberry's § 2255 motion and a COA be denied. Lineberry filed objections to the magistrate judge's recommendation, arguing that he could raise the issue concerning the meaning of "proceeds" in a § 2255 motion because his claim was based on the intervening change in the law announced by the Supreme Court in *Santos*. Lineberry also asserted that this court concluded in *Garland* that *Santos* applied retroactively on collateral review. *Garland*, 615 F.3d at 396-97. The magistrate judge, however, issued an order on September 30, 2010, granting Lineberry's motion to file a supplemental motion to the extent that it offered a clarification of the claims previously raised in his § 2255 motion.

On March 22, 2011, the district court overruled Lineberry's objections, adopted the magistrate judge's report and recommendation, denied the § 2255 motion, and dismissed the motion with prejudice. The district court also denied a COA and Lineberry's in forma pauperis (IFP) motion. Lineberry filed a timely notice of appeal.

No. 11-40390

We granted Lineberry both a COA on the issue of whether the district court erred in failing to vacate Lineberry's money-laundering convictions in light of the holding in *Santos,* and on his IFP motion. *See United States v. Lineberry*, No. 11-40390 (5th Cir. filed Mar. 2, 2012) (order granting COA). We also directed the Government to address the issue of whether vacating the money-laundering convictions would have any effect on Lineberry's conviction for making a false declaration to the court.

## IV.

The court reviews the district court's factual findings relating to a 28 U.S.C. § 2255 motion for clear error and its legal conclusions de novo. *United States v. Redd,* 562 F.3d 309, 311 (5th Cir. 2009).

## A.

Lineberry primarily argues that his money-laundering convictions should be dismissed because they were non-existing offenses based on the definition of "proceeds" in light of *Santos.* According to Lineberry, each count in the indictment involved monetary transfers that were payments relating to business expenses such as advertisements, office furniture, rent, and salaries. Thus, Lineberry contends that he was convicted of a crime that did not meet the definition of proceeds under *Santos* because "proceeds," as applied in his case means "gross receipts," as opposed to "profits." Accordingly, Lineberry argues that all money-laundering counts "merged" with the lesser-included crime of aggravated promotion of prostitution in order to obtain a harsher sentence.

The Government, on the other hand, avers that a merger problem is nonexistent in this case because Lineberry only was charged with money-laundering and not with the underlying prostitution activity. The Government maintains that, in *Santos* and all other cases[4] in which a defendant was

---

[4] We are aware of one exception in which the defendant was convicted only of the conspiracy to commit promotional laundering, *United States v. Bueno*, 585 F.3d 847, 848 (5th

11

convicted of conspiracy to launder money, the defendant also was convicted of a separate charge involving the underlying illegal activity, and thus, there was a merger problem. Accordingly, the Government submits that in the absence of a separate conviction for the underlying unlawful activity, there is no merger problem, and notes that a recent district court's decision has made that determination in *Golb v. Martin*, No. 1:09CV7, 2011 WL 3511482 (E.D. Tex. June 13, 2011). The Government further argues that the legislative history of the money-laundering statute does not address the proceeds of prostitution. Therefore, by default, the presumption of "gross receipts" applies to such proceeds, and Lineberry's convictions should be upheld.

**B.**

Applying Justice Stevens' concurrence, we now consider the first part of the holding: "whether giving 'proceeds' a broad interpretation to mean 'receipts' would result in merging the underlying illegal activity with the money laundering charge." *Wilson v. Roy*, 643 F.3d 433, 436 (5th Cir. 2011) (citing *Garland*, 615 F.3d at 402–04).

Unlike the defendants in *Santos* or *Garland*, Lineberry was not convicted of the predicate crime underlying the money-laundering convictions. Thus, it is a question of first impression whether there is a merger problem under the money-laundering statute where a defendant was not charged with the specified unlawful activity.

We conclude that there is no "merger problem" present in this case, as Lineberry's case is factually distinguishable from *Santos* and *Garland*. Santos

---

Cir. 2009), a case which involved a drug trafficking operation. In drug trafficking cases, we have relied on Justice Stevens' acknowledgment that "proceeds" is not intended to mean "profits" where the predicate offense involves the sale of contraband; rather, "gross receipts" is the appropriate definition of proceeds in such cases. *Wilson v. Roy*, 643 F.3d 433, 436-37 (5th Cir. 2011) (citations omitted). Therefore, money-laundering convictions related to drug trafficking proceeds do not implicate the merger problem.

was charged with and convicted of the specified unlawful activity of illegal gambling, conspiracy to commit money-laundering, and the substantive offense of money-laundering. *Santos*, 553 U.S. at 509-10. Additionally, in *Garland*, we expressly considered the potential existence of the merger problem resulting from Garland's mail and securities fraud convictions in connection with his money-laundering convictions. *Garland*, 615 F.3d at 395-96. The *Garland* court stated, "it is possible that the same payout of proceeds as 'returns' to investors [of the pyramid scheme] formed the basis of the mail and securities fraud convictions, as well proved the element of the money-laundering charge that Garland transacted in 'proceeds' of the underlying unlawful activity." *Id.* Therefore, because Lineberry was not charged with the underlying unlawful activity of promoting prostitution, we discern no "perverse result" of the merger problem as contemplated by *Santos*. *See Golb*, 2011 WL 3511482 at *7 (concluding that there was no merger problem because the petitioner was not charged with nor convicted of the underlying activity of drug trafficking); *Rippetoe v. Roy*, No. 5:08-CV-210, 2011 WL 2652131, at *6 (E.D. Tex. June 9, 2011) (noting no potential of a "merger problem" where defendant pled guilty to money-laundering charges but not to the underlying specified unlawful activity); *see also Black's Law Dictionary* 1078 (9th ed. 2009) (defining merger in the criminal law context as "[t]he absorption of a lesser included offense into a more serious offense *when a person is charged with both crimes*, so that the person is not subject to double jeopardy" (emphasis added)).

Moreover, the Supreme Court's reasoning for being concerned about the merger problem is largely inapplicable to Lineberry's case. Most importantly, Lineberry's case does not embody Justice Stevens' concern about "double jeopardy" since Lineberry was only charged with money-laundering. *See Santos,* 553 U.S. at 527 ("[a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is

in practical effect tantamount to double jeopardy"). Lineberry's underlying specified unlawful activity also arose under the Texas Penal Code, not the federal criminal code. Therefore, Justice Scalia's concern regarding "why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime," *id.* at 517, is likewise inapplicable here. Thus, we conclude that, under the specific facts of this case, we are not confronted with a merger problem.

In the absence of a merger problem, the term "proceeds" is presumptively defined as "gross receipts," unless the legislative history of the money-laundering statute supports a finding that "proceeds" in a particular case means "profits." *Garland,* 615 F.3d at 401. While the legislative history refers to prostitution generally, it does not address the proceeds of prostitution. *See* 132 Cong. Rec. H408-01 (1986), 1986 WL 770911 (statement of Rep. Meyers) ("Attorney General Edwin Meese has stated that 'money laundering supports, encourages, and facilitates a large variety of criminal activities including narcotics trafficking, income tax evasion, bribery, investment fraud, illegal tax shelter programs, securities fraud, prostitution, and gambling. . . . It is estimated that approximately $100 billion is laundered through U.S. financial institutions annually. A large portion of this amount comes from illegal gambling, prostitution, and other enterprises."); 132 Cong. Rec. E3082-01 (1986), 1986 WL 794188 (statement of Rep. LaFalce) ("Money laundering is the process by which criminals–and, most notably, drug dealers–disguise the origin of money obtained illegally from activities such as drug dealing, prostitution, investment fraud, gambling, or racketeering."); 132 Cong. Rec. H5702-03 (1986), 1986 WL 783103 (statement of Rep. Lundine) (similar to Rep. LaFalce's statement). As we find no legislative history specifically addressing the proceeds of prostitution,

No. 11-40390

we apply Justice Stevens' default presumption that "proceeds" means "gross receipts" in Lineberry's case. *See Santos*, 553 U.S. at 528 n.7 (citations omitted).

We also note that the transactions underlying Lineberry's money-laundering convictions represented "gross receipts," rather than "profits."

First, Lineberry admitted during his cross-examination testimony that he conducted several credit card transactions to purchase advertisements in adult magazines for his escort agency. Lineberry further explained that the business paid the escorts' salaries, and that he either collected the cash generated from their services or deposited the money in a bank account if the escort was out of town.

Second, the jury instructions provided that,"[t]he term 'proceeds' includes any property, or any interest in property that one would acquire or retain as a result of the commission of the underlying specified unlawful activity. Proceeds can be any kind of property, not just money." The jury also completed a special verdict form that required a determination of the value of the laundered funds, which the verdict form defined as "the property, funds, or monetary instrument involved in the transaction, financial transaction, monetary transaction, transfer, or transmission in violation of 18 U.S.C. § 1956." The jury found the value of the laundered funds to be $1,000,000 or less, but more than $400,000.

Finally, on direct appeal, we explained Lineberry's payment of "proceeds" as the following: "Lineberry . . . generated approximately $560,000 from . . . . illegal activities." *Lineberry*, 185 F. App'x at 368. He "transferred and distributed these proceeds via the United States banking system and various credit-card systems; portions were used to promote and carry on the organization's activities, such as recruiting, advertising, apartment rental, payroll expenses for prostitutes, and communications expenses." *Id.*

Based on the foregoing, we conclude that Lineberry's convictions for money-laundering were based in whole or in part on funds which can be

15

characterized as "gross receipts," rather than "profits." The funds generated from Lineberry's prostitution business were used in recruiting, advertising, apartment rental, payroll expenses for escorts, and communication expenses. *Id.* Notably, the jury instructions and the special verdict form did not require jurors to focus on "profits" as a definition of "proceeds." *See United States v. Fernandez*, 559 F.3d 303, 316 (5th Cir. 2009) (noting that jury instruction which defined "'proceeds' as includ[ing] any property, or any interest in property, that someone acquires or retains as a result of the commission of the underlying specified unlawful activity. . . . did not require jurors to focus on 'profits.'"). Thus, we conclude that the jury's finding that Lineberry laundered money under a broad definition of "proceeds" does not warrant the vacatur of Lineberry's money-laundering convictions.

Accordingly, we decline to vacate Lineberry's money-laundering convictions and sentence on the basis of *Santos*.

## V.

For the foregoing reasons, we AFFIRM the district court's dismissal of Lineberry's 28 U.S.C. § 2255 motion.[5]

---

[5] Regarding his false declaration conviction, Lineberry argues that if the money-laundering convictions are set aside, his conviction for making a false declaration under 18 U.S.C. § 1623 must be vacated as well. This false declaration charge was based on Lineberry's testimony that he never received any money from his escort business. *Lineberry*, 185 F. App'x at 368. This statement occurred during Lineberry's sentencing hearing for his conviction for being a felon in possession of a firearm. *Id.* Lineberry later clarified that he used money from the business to make house payments and pay bills. *Id.* Accordingly, Lineberry argues that, because there was no evidence that he personally received proceeds as defined in *Santos*, he made no false declaration.

Prior to *Santos,* the money-laundering statute did not define the term "proceeds," which could have meant either "gross receipts" or "profits." *Santos,* 553 U.S. at 511. Therefore, at the time of trial, Lineberry's statement that he never received any money from his escort business was materially false regardless of whether he used some or all of the money to pay expenses. Therefore, we decline to vacate Lineberry's false declaration conviction.