# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2013

No. 12-30115

Lyle W. Cayce
Clerk

WILLIAM EDWARD STEWART,

Petitioner-Appellant

v.

JOE KEFFER,

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:08-CV-909

Before STEWART, Chief Judge, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant William Edward Stewart ("Stewart") appeals the district court's denial of his motion pursuant to 28 U.S.C. § 2241, collaterally attacking his sentence after pleading guilty to money laundering. Stewart argues that the indictment created a "merger" problem, that he pled guilty to a nonexistent crime, and that his sentence should be vacated in light of *United States v. Santos*, 553 U.S. 507 (2008). Finding no error, we AFFIRM for the reasons more fully set forth below.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30115

I.

In February 1999, Stewart was indicted on one count of conspiracy to commit wire fraud under 18 U.S.C. § 371 (Count 1), four counts of wire fraud pursuant to 18 U.S.C. § 1343 (Counts 2-5), two counts of money laundering under 18 U.S.C. § 1956(a)(1)(A)(1) (Counts 6-7), and four counts of money laundering under 18 U.S.C. § 1957(a) (Counts 8-11). Stewart (and his Co-Defendants) were charged with falsely representing to potential investors that they operated an investment firm known as Allied Investment Company ("Allied") and that Stewart was the CEO. Stewart fraudulently induced investors to place funds with Allied, but those funds were never invested. Instead, the Defendants used the funds to pay personal expenses, to purchase investments for the Defendants' personal benefit, and to pay purported earnings to earlier investors. The funds received from investors were deposited in First Bank & Trust. The Defendants then transferred the funds to accounts at Metro Bank that were held by Allied and controlled by the Defendants.

Stewart pled guilty to Count 6 of the indictment, which charged him with money laundering for the purpose of promoting the Defendants' unlawful activity; specifically, it charged Stewart with engaging in a wire transfer of $315,000 of investor funds from an account located at First Bank & Trust in Beaumont, Texas, to an Allied account at Metro Bank in Houston, Texas, on July 30, 1998. All other counts (Counts 1-5, 7-11) were dismissed by the Government.

The district court sentenced Stewart to 240 months in prison, 5 years of supervised release, and ordered restitution in the amount of $1,429,302.[1] Stewart appealed his sentence and conviction, and this court affirmed. Stewart later filed a 28 U.S.C. § 2241 habeas petition in which he argued the savings

---

[1] Stewart was initially sentenced to 250 months' imprisonment, 5 years of supervised release, and was ordered to pay restitution in the amount of $1,886,200, but an amended judgment was subsequently entered.

No. 12-30115

clause of 28 U.S.C. § 2255 applied and that his money laundering conviction should be invalidated in light of the Supreme Court's then-recent decision in *United States v. Santos*, 553 U.S. 507 (2008), because he was convicted of a nonexistent offense. The district court found *Santos* was inapplicable because it applied only in the context of illegal gambling.

Stewart appealed and on February 17, 2011, this court vacated the district court's decision and remanded because the district court did not have the benefit of this court's contrary reasoning interpreting *Santos*. *See Garland v. Roy*, 615 F.3d 391 (5th Cir. 2010). On remand, the district court ruled that Stewart did satisfy the requirements of the savings clause of § 2255, but denied and dismissed his § 2241 claim. It found no "merger" problem because there was no overlap between his wire fraud counts and his money laundering conviction.

## II.

In an appeal from the denial of habeas relief, this court reviews the district court's determinations of law *de novo* and its findings of fact for clear error. *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001).

## III.

To assess Stewart's claim on appeal, it is first necessary to put his argument in context by briefly discussing the Supreme Court's *Santos* decision and our recent application of that case in *Garland*. Under 18 U.S.C. § 1956, the crime of money laundering occurs when an individual "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity." In *Santos*, the Supreme Court, in a plurality opinion, clarified that the term "proceeds," as used in the statute, means "profits" rather than "gross receipts."[2]  553 U.S. at 514.

---

[2] In response to the *Santos* decision, Congress amended 18 U.S.C. § 1956 in May 2009 to provide a definition for "proceeds." *See* Fraud Enforcement and Regulatory Act of 2009,

That is to say, in *Santos*, when a defendant was convicted of illegal gambling activity and was also charged with money laundering for the transactions in which he paid his employees and bettors, the Court found that these transactions—which were just paying the "essential expenses of operating" the underlying crime—did not constitute money laundering. *Id.* at 524 (plurality opinion), 528 (Stevens, J., concurring). The Court found that a "merger problem" would arise if the "underlying illegal activities would also constitute money laundering when the offenses involved transactions in which receipts were passed on to someone else." *Wilson v. Roy*, 643 F.3d 433, 436 (5th Cir. 2011) (citing *Santos*, 553 U.S. at 515-17).[3]

In *Garland v. Roy*, 615 F.3d 391 (5th Cir. 2010), we assessed *Santos* in light of the fact that it was a plurality opinion and ultimately chose to adopt Justice Stevens's narrow concurrence. We interpreted Justice Stevens's concurrence as a "two-part" holding: the first part held that the rule of lenity required a finding that "proceeds" meant "profits" in cases where defining proceeds as gross receipts would result in a "merger problem." *Id.* at 402. A merger problem would exist "if 'proceeds' were to be defined as 'receipts' rather than 'profits,'" such that the money laundering charge could be based on the same transaction as the predicate crime. *Id.* at 400. And secondly, in cases where there is no merger problem, Justice Stevens stated that there should be a

---

Pub.L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009), codified at 18 U.S.C. § 1956(c)(9). As amended, the statute defines "proceeds" broadly as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). This amendment effectively overruled *Santos* and applies prospectively.

[3] *See Santos*, 553 U.S. at 517 ("Interpreting 'proceeds' to mean 'profits' eliminates the merger problem. Transactions that normally occur during the course of running a lottery are not identifiable uses of profits and thus do not violate the money-laundering statute. More generally, a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid.").

presumption that "proceeds" should be defined as "gross receipts," but that this presumption could be rebutted by the legislative history of § 1956. *Id.* at 402.[4] In *Garland*, this court held that Garland's convictions for fraud potentially merged with his money laundering conviction when the Government alleged that Garland engaged in mail fraud to sell fraudulent securities and then used the proceeds of those sales to distribute money to previous investors, under the guise that he was returning their initial investments. *Id.* at 395.

In contrast to *Santos* and *Garland*, there are no facts presented here to suggest that the money laundering charge was in any way based on the payment of essential operating expenses. Rather, the factual basis supporting Stewart's charge was simply the transfer of funds from one bank account to another in order for Stewart to access the funds. There is nothing to suggest that the funds were used to pay expenses of the crime.[5]

The facts here are strikingly similar to those of *United States v. Halstead*, 634 F.3d 270 (4th Cir. 2011). In *Halstead*, the defendant committed healthcare fraud and subsequently transferred his fraudulently obtained funds into his own account. The court explained:

> After Priority One fraudulently obtained money from the healthcare providers, Halstead directed that the money be transferred from Priority One to West Virginia Medical Corporation, a company created to manage Priority One. He also directed that the money be further transferred from West Virginia Medical Corporation to Burns and himself, in this case through his company, Practice Systems. These transfers constituted the "transactions" of money laundering . . . . Halstead conducted a financial transaction

---

[4] For an extensive account of *Santos* and *Garland*, see our recent discussion in *United States v. Lineberry*, 702 F.3d 210, 212-16 (5th Cir. 2012).

[5] Indeed, while we are operating on limited facts, as Stewart pled prior to trial, the record supports this conclusion: "Bruce Neill Smith [a Co-Defendant] wired the funds into my [Defendant Stewart's] account (Allied Investment Company, Metro Bank, Houston, Texas) from his (Smith's) First Bank & Trust, Beaumont, Texas bank account."

with money he knew was the result of healthcare fraud, and he had the intent to further an unlawful activity when making those transfers, one category of transfers from Priority One to West Virginia Medical Corporation and another from West Virginia Medical Corporation to his own corporation's bank accounts. Moreover, both the transfers to the management company and the transfers to Halstead's company were separate from the transactions constituting healthcare fraud. The healthcare fraud charges were defined by the obtaining of money from the fraudulent billing of healthcare providers, while the money laundering charge was defined by transferring the proceeds thereafter.

Thus, the merger problem never arises in the circumstances of this case, and *Santos* provides Halstead no relief.

*Id.* at 280-81. It further stated that *Santos* "does not warrant relief in this case where the laundering of proceeds from the wire fraud involved transactions distinct from and subsequent to the transfers involved in the wire fraud itself," and that "regardless of whether 'proceeds' is defined as 'gross receipts' or 'net profits,' a merger problem did not occur because [defendant's] commission of wire fraud was complete before he committed money laundering." *Id.* at 271-72. And later: "[Where the indictment charged the defendant with transferring funds from one account to another], in facilitating these transfers, [defendants] were not paying the expenses of the fraud, but rather were reaping the fruits of their crimes." *United States v. Cloud*, 680 F.3d 396, 407 n.4 (4th Cir. 2012) (citing *Halstead*, 634 F.3d at 273).

Similar to *Halstead*, here Stewart was charged with transferring the proceeds through various accounts into his own coffers; he was not charged with paying persons involved in the underlying fraud for services necessary to the operation of the fraud. Thus we conclude that there is no merger problem.[6]

---

[6] Under the second part of Justice Stevens's bifurcated analysis endorsed by this court, Justice Stevens presumes that "proceeds" should be defined as "gross receipts," but would allow that presumption to be rebutted by legislative history. Because in this case regardless of whether "proceeds" is defined as "gross receipts" or "profits," a merger problem did not occur as Stewart's commission of wire fraud was complete before he committed money laundering,

No. 12-30115

Stewart maintains that there was a merger problem because Count 2 of the indictment alleged that wire fraud occurred from March to October 1998 and that this time frame encompassed the date on which the money laundering (Count 6) occurred—July 30, 1998—such that Stewart was charged twice for the same transaction. But Stewart mischaracterizes the indictment. While Count 2 does reference this time frame to explain the context of the scheme in its entirety, it is clear that the charge underlying Count 2 is a wire fraud transaction occurring on July 3, 1998, whereby the Defendants transferred $715,000 in investor funds from First Counties Bank to First Bank & Trust. The charge of Count 2 is clearly distinct from Count 6's July 30, 1998 transfer of funds. Furthermore, even assuming the dates of the charges did overlap, it is not the date of the transactions that must guide our analysis, but rather the nature of the payments and whether they are or are not being used to pay the costs of the illegal activity. As noted above, there is nothing here to suggest that the funds of the transaction charged in Count 6 were used to pay any expenses of the crime.

Finally, Stewart has cited no case in which a defendant pleads to a money laundering charge, has all other charges dropped, and then successfully argues that an impermissible merger has occurred—the argument Stewart tries to make here. In fact, the authorities Stewart cites are easily distinguishable from the instant case, as they involved a defendant being tried and convicted of both money laundering and a separate charge involving the underlying illegal activity. For example, *United States v. Cloud*, 680 F.3d 396, involved a mortgage fraud scheme. A jury convicted the defendant on multiple counts, including three counts of mail fraud, thirteen counts of bank fraud, and six counts of money laundering. *Id.* at 399. The Fourth Circuit reversed the money laundering

---

we do not think it necessary to delve into the legislative history of the money laundering statute to resolve this particular case.

convictions where they were based on transactions that involved the "past and essential expenses of Cloud's mortgage fraud payment," namely Cloud paying the "recruiters, buyers, and coconspirators for services performed." *Id.* at 408. Thus an impermissible merger occurred on those facts where Cloud was charged and convicted of fraud offenses and money laundering offenses. This is not the case here.

Stewart was initially charged with eleven counts, but he pled guilty to only one count of money laundering, and all other charges were dismissed. Thus, we are not persuaded that Stewart's charges have impermissibly merged where he pled guilty to a single money laundering charge but not to the underlying specified unlawful activity. In fact, our recent decision in *United States v. Lineberry* is instructive in this context. 702 F.3d 210 (5th Cir. 2012). In *Lineberry*, we found that there was no merger problem where the defendant was convicted under the money laundering statute but was never charged with the underlying specified unlawful activity—in that case, the promotion of aggravated prostitution. *Id.* at 218.[7] Importantly, in doing so, we distinguished Lineberry's facts from those of *Santos* and *Garland*, stating, "Unlike the defendants in *Santos* or *Garland*, Lineberry was not convicted of the predicate crime underlying the money-laundering convictions." *Id.*[8]

Accordingly, we decline to vacate Stewart's money laundering sentence.[9]

---

[7] While we recognize that Lineberry was never even charged with the underlying offense and Stewart was charged with the underlying offense but the charges were dismissed, we nevertheless find *Lineberry*'s analysis applicable.

[8] *See also Rippetoe v. Roy*, No. 5:08-CV-210, 2011 WL 2652131, at *6 (E.D. Tex. June 9, 2011) (noting no potential of a "merger problem" where defendant pled guilty to money-laundering charges but not to the underlying specified unlawful activity).

[9] Stewart also argues that his plea was not knowing and voluntary because he pled guilty to a nonexistent crime. As we have already rejected Stewart's argument that he pled guilty to a "phantom charge," we find no merit to this allegation.

No. 12-30115

IV.

For the above reasons, we AFFIRM the district court's dismissal of Stewart's § 2241 petition.