**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 25, 2013

No. 11-51147

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KURT BRANHAM BARTON,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:11-CR-83

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

On February 15, 2011, defendant-appellant Kurt Barton was indicted on thirty-nine counts of conspiracy, fraud, and money laundering charges alleging that Barton defrauded would-be investors out of millions of dollars by orchestrating a Ponzi-like scheme through his company Triton Financial and related entities. The district court appointed counsel on February 25, 2011 and set a trial date of April 25. The district court later continued the trial date to August 8, 2011 on Barton's motion. In July 2011, Barton moved for a second

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

continuance and for the appointment of additional counsel to help prepare and try the case. The district court granted the latter motion and appointed a second defense attorney but denied the motion for a second continuance. The case went to trial as scheduled on August 8, 2011. On August 17, the jury found Barton guilty on all counts. Thereafter, Barton moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, arguing that the district court improperly denied the second continuance request and that Barton was denied his Sixth Amendment right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The district court denied the Rule 33 motion. The court sentenced Barton to 204 months imprisonment to be followed by five years of supervised release and ordered restitution in excess of $63,000,000. On appeal, Barton raises four challenges to his various convictions. We affirm.

First, as in his motion for a new trial, Barton again argues that the district court abused its discretion by denying his second motion for a continuance. "Trial judges have broad discretion in deciding requests for continuances, and we review only for an abuse of that discretion resulting in serious prejudice." *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009). Here, the district court afforded Barton one continuance of more than three months and appointed additional counsel at Barton's request. Barton's generalized assertions that his attorneys could have presented a stronger defense with more time to prepare fall short of demonstrating serious prejudice. *See Stalnaker*, 571 F.3d at 439; *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007). Barton thus fails to show that the trial court abused its broad discretion by declining to grant him a second continuance.

Second, Barton argues that he was denied his Sixth Amendment right to counsel. Unlike in his motion for a new trial before the district court, Barton's argument to this court is that his attorneys altogether failed to provide

meaningful representation such that under the rule of *United States v. Cronic*, 466 U.S. 648 (1984), he need not show *Strickland* prejudice.  Barton's reliance on *Cronic* is misplaced.  "When [the Supreme Court] spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecution's case, [the Court] indicated that the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002) (citing *Cronic*, 466 U.S. at 659).  Here, counsel represented Barton throughout the proceedings below.  Barton's first-appointed attorney successfully moved for the appointment of a second attorney who in turn assisted with the final month of preparation and advocated on Barton's behalf during and after trial.  During trial, counsel lodged objections, examined witnesses, and argued the case to the jury.  Any deficiency in the quality of this representation plainly sounds under *Strickland* rather than *Cronic*.  *See Gochicoa v. Johnson*, 238 F.3d 278, 284-85 (5th Cir. 2000) ("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed[] . . . .").  To the extent that Barton in the alternative seeks to pursue a *Strickland* claim, we follow our normal practice and decline to consider it, without prejudice to Barton's pursuing such a claim in a later collateral proceeding.  *E.g.*, *United States v. Montes*, 602 F.3d 381, 387-88 (5th Cir. 2010).

Third, Barton argues that there was insufficient evidence to support several of the wire fraud and money laundering convictions involving one Triton investor because the government did not prove that Barton caused unapproved transfers from the victim's Fidelity Investments account by means of false representations.  "We review properly preserved claims that a defendant was convicted on insufficient evidence with substantial deference to the jury verdict, asking only whether a rational jury could have found each essential element of the offense beyond a reasonable doubt." *United States v. Davis*, 690 F.3d 330, 336 (5th Cir. 2012). "To prove wire fraud, the government must prove: (1) a scheme or artifice to defraud; (2) material falsehoods; and (3) the use of

interstate wires in furtherance of the scheme. Violation of the wire-fraud statute requires the specific intent to defraud, i.e., a 'conscious knowing intent to defraud.'" *United States v. Brooks*, 681 F.3d 678, 700 (5th Cir. 2012) (citations omitted). Our review of the record indicates that ample evidence supported the jury's verdict as to the challenged counts. The victim testified that he authorized one transfer of $50,000 to Triton from his account but never authorized further transfers. Barton's executive assistant testified at length about the process she used to forge financial documents for Barton, including fraudulent authorizations to transfer money from the Fidelity account of another Triton investor. The executive assistant testified that she later "created a template" for a similar authorization form for the account of the victim at issue and identified Barton's handwriting on the completed forged transfer forms. A Federal Bureau of Investigations agent who searched Triton's offices testified that he found files containing the forged transfer forms for the transfers at issue, each of which contained an identical photocopy of the victim's signature. Because the evidence was sufficient to support the convictions on these wire fraud counts, Barton's challenge to the related money laundering counts on this same basis likewise fails.

Finally, Barton challenges his conviction on five other counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). That statute provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[] . . . shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i).  Albeit in conclusory fashion, Barton contends that under *United States v. Santos*, 553 U.S. 507 (2008), the government was required to prove that the financial transactions at issue in these money laundering counts involved "profits" of the Triton scheme, rather than "gross receipts," and failed to do so.

We have previously discussed at length the precedential effect of the fractured decision in *Santos*.  *See United States v. Lineberry*, 702 F.3d 210 (5th Cir. 2012); *Garland v. Roy*, 615 F.3d 391 (5th Cir. 2010):

> "In *Garland*, we . . . recogniz[ed] Justice Stevens' [*Santos*] concurrence as controlling, [and] then interpreted his concurrence as a 'two-part' holding." The first part of Justice Stevens' concurrence held that the rule of lenity requires a finding that "proceeds" means "profits" in cases where defining proceeds as "gross receipts" would result in a "merger problem." We noted in *Garland* that a merger occurs "when a defendant could be punished for the same 'transaction' under the money-laundering statute as well as under another statute, namely the statute criminalizing the 'specified unlawful activity' underlying the money-laundering charge." Thus, a "merger problem" would exist "if 'proceeds' were to be defined as 'receipts' rather than 'profits,'" and the money-laundering charge could be based on the same "transaction" as the "predicate crime." The second part of Justice Stevens' concurrence held that, in cases where there is no "merger problem," there should be a presumption that "proceeds" should be defined as "gross receipts," but that this presumption could be rebutted by the legislative history of the money-laundering statute.

*Lineberry*, 702 F.3d at 215-16 (citations omitted).

Barton, however, appears to ignore our earlier distillations of the governing principles from *Santos* and instead erroneously relies on "[t]he *Santos* plurality['s] . . . view that the meaning of the word 'proceeds' cannot change with the statute's application." We conclude that under the analysis we adopted in *Garland*, Barton has not shown that the convictions he challenges implicate this merger problem because those counts explicitly were not premised on the same

transactions as any of the wire fraud counts. *See Garland*, 615 F.3d at 402. The underlying wire fraud counts addressed certain specific transactions whereby Barton fraudulently obtained funds from "investors" in the Triton scheme. The related money laundering charges focused on specific distinct transactions further transferring those unlawfully-obtained funds onward to various third-party entities. This case is thus distinct from *Garland*, where the convictions implicated the *Santos* merger problem because "it [was] possible that the same payout of proceeds as 'returns' to investors [both] formed the basis of the [defendant's] mail and securities fraud convictions, [and also] proved the element of the money-laundering charge that [the defendant] transacted in 'proceeds' of the underlying unlawful activity." *See id.* at 395-96. Barton has failed to demonstrate that *Santos* requires reversal of the challenged money laundering convictions.

Having concluded that each of Barton's arguments for reversal lacks merit, we AFFIRM the judgment of the district court in all respects.